Filed 8/30/24  In re E.V. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.V., a Person Coming Under the Juvenile Court Law. | B334052 (Los Angeles County Super. Ct. No. 19CCJP01343C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. S.P., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Rudolph A. Diaz, Judge.  Conditionally reversed with directions.

Brian Bitker, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

In this juvenile dependency appeal, S.P. (mother) appeals the juvenile court's order terminating her parental rights to her young daughter E.V. (daughter). Mother's only argument on appeal is that the juvenile court and the Los Angeles County Department of Children and Family Services (Department) failed to comply with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (Cal-ICWA). Specifically, mother claims the inquiry into daughter's father's Indian ancestry was insufficient. The Department concedes its error. Mother seeks a reversal of the order terminating parental rights and remand so that the juvenile court can ensure compliance with Cal-ICWA.

In light of our Supreme Court's recent decision in *In re Dezi C.* (Aug. 19, 2024, S275578) ___ Cal.5th ___ [2024 Cal. LEXIS 4634] (*Dezi C.*) and the Department's undisputed error, we conditionally reverse the order terminating parental rights.

## BACKGROUND

### 1. The Family

As a minor, mother was a dependent of the court and spent time living with a foster family. Mother stated she had maintained a positive relationship with her previous foster parents (caregivers) as well as with her immediate family, including two older siblings and her mother (maternal

grandmother). Mother also considered father's parents (paternal grandparents) a part of her support network.

Daughter is mother's third and youngest child. Mother's two older children, both sons (half siblings), also were dependents of the court. The juvenile court terminated mother's parental rights as to her oldest son, who was adopted by caregivers. As to mother's younger son, the court ordered legal guardianship with caregivers. Caregivers are also daughter's prospective adoptive parents.

When the underlying proceedings began, daughter's father S.V. (father) was incarcerated pending trial on murder and other charges. Eventually, while the underlying proceedings were pending, father was convicted of murder, possession of a firearm by a convicted felon, and carrying a loaded firearm. During these proceedings, father declined to provide any background information to the Department. However, mother indicated, prior to his incarceration, father lived in Pomona with paternal grandparents. Mother also stated she visited paternal relatives with daughter and that "[t]hey love the baby."

2.    **Brief Case Summary**

Besides her ICWA/Cal-ICWA argument, mother does not challenge the merits of the juvenile court's rulings. Consequently, we include only a brief summary of them and the underlying facts here.

Shortly after daughter was born, the Department filed a Welfare and Institutions Code section 300 petition on her behalf.[1] In April 2022, the Department filed an amended petition (petition). At the June 2022 adjudication, the juvenile court

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

sustained allegations in the petition relating to mother's substance abuse and parents' domestic violence. The court declared daughter a dependent of the court, removed daughter from father's custody and care, placed daughter with mother under Department supervision, and ordered family reunification and maintenance services.

Although initially daughter was placed with mother, in October 2022 (after mother stopped drug testing, was not compliant with her court-ordered case plan, and was arrested for possession of a deadly weapon), the juvenile court ordered daughter removed from mother's custody. Soon after, and based on the same allegations that resulted in daughter's removal from mother, the Department filed a supplemental petition (section 387) on daughter's behalf. A couple of months later, in December 2022, the Department filed both a subsequent petition (section 342), alleging mother and father each had a history of engaging in dangerous criminal behaviors, and a first amended supplemental petition (section 387), alleging father failed to comply with his court-ordered case plan. According to the Department, since early 2019 mother had "shown a consistent pattern" "of carrying concealed weapons, criminal and aggressive behavior, and marijuana use." In January 2023, father consented to caregivers becoming daughter's legal guardians.

At a February 2023 hearing, the juvenile court sustained the December 2022 subsequent petition and sustained in part and dismissed in part the first amended supplemental petition. The next month, in March 2023, the juvenile court ordered no reunification services for mother or father.

Mother's visits with daughter were sporadic. For some time in 2023, mother's whereabouts were unknown, and she did not cooperate with the Department.

On October 24, 2023, the juvenile court terminated mother's and father's parental rights to daughter. The court ordered adoption as daughter's permanent plan. Mother appealed.

### 3. Facts Relevant to ICWA/Cal-ICWA

#### a. Mother

With the initial February 2022 petition, the Department included an ICWA form indicating a Department social worker spoke with mother about daughter's Indian status. Mother gave the social worker "no reason to believe the child is or may be an Indian child." In connection with the February 2022 detention hearing, mother filed an ICWA-020 form indicating she had no Indian ancestry. At that hearing, the juvenile court stated it did not have a reason to know daughter was an Indian child.

In connection with the October 2022 supplemental petition, the Department again included an ICWA form indicating a Department social worker spoke with mother about daughter's Indian status. Again, mother gave the social worker "no reason to believe the child is or may be an Indian child."

In connection with the December 2022 subsequent petition and first amended supplemental petition, the Department again included an ICWA form indicating a Department social worker spoke with mother about daughter's Indian status. Again, mother gave the social worker "no reason to believe the child is or may be an Indian child."

Mother and her sister both reported the maternal family had no Indian ancestry. Both stated repeatedly their family was

from Mexico and had no Indian ancestry. The juvenile court previously had held ICWA did not apply to daughter's two half siblings.

Additionally, in an earlier proceeding (when mother was a minor), maternal grandmother stated she was born in Mexico and her family lives in Mexico.

### b. Father

In connection with the February 2022 detention hearing, father filed an ICWA-020 form indicating he had no Indian ancestry. In December 2022 and again in March 2023, father denied Indian ancestry.

In January 2023, when father consented to caregivers becoming daughter's guardians, he also knowingly and explicitly waived rights under ICWA.

Previously, in a 2015 dependency matter involving an older child of father's, the juvenile court found ICWA did not apply as to father.

Other than father, the Department did not ask paternal relatives about daughter's potential Indian ancestry.

### DISCUSSION

### 1. Applicable Law

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards." (*Dezi C.*, *supra*, __ Cal.5th __ [p. 8].) Under Cal-ICWA, the juvenile court and the Department "have an affirmative and continuing duty to inquire whether" a dependent child "is or may be an Indian child." (§ 224.2, subd. (a); *Dezi C.*, *supra*, __ Cal.5th __ [p. 12].) For these purposes, an "Indian child" is a child who (1) is "a

6

member of an Indian tribe," or (2) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal law definition].)

Under Cal-ICWA, the Department and juvenile court have an initial "duty to inquire whether [a] child is an Indian child." (§ 224.2, subd. (b); *id.*, subd. (a).)  The Department discharges this duty chiefly by "asking" family members "whether the child is, or may be, an Indian child."  (*Id.*, subd. (b).)  This includes inquiring of not only the child's parents, but also others, including but not limited to, "extended family members."  (*Ibid.*) "Extended family members" include the dependent child's adult "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c) [adopting federal law definition].)  For its part, the juvenile court discharges this duty "[a]t the first appearance in court of each party" by asking "each participant present" "whether the participant knows or has reason to know that the child is an Indian child."  (§ 224.2, subd. (c).)  This duty is often referred to as the "initial duty of inquiry."  (*Dezi C.*, *supra*, __ Cal.5th __ [p. 13].)

The second duty is the duty of the Department or the juvenile court to "make further inquiry regarding the possible Indian status of the child."  (§ 224.2, subd. (e).)  This duty of further inquiry is triggered if the Department or court "has reason to believe that an Indian child is involved" because the record contains "information suggesting" the child is an Indian child, and, once triggered, obligates the Department to conduct further interviews to gather information, to contact the Bureau of

7

Indian Affairs and state department of social services for assistance, and/or to contact the relevant Indian tribe(s).  (*Ibid*.)  "Reason to believe" is defined as "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (§ 224.2, subd. (e)(1).)

The third duty is the duty to notify the relevant Indian tribe(s).  (§ 224.3, subd. (a); 25 U.S.C. § 1912(a).)  This duty is triggered if the Department or the court "knows or has reason to know . . . that an Indian child is involved."  (§ 224.3, subd. (a).)

Recently, in *Dezi C.*, *supra*, __ Cal.5th __ [p. 6], our Supreme Court addressed "whether a child welfare agency's failure to make a proper inquiry under California's heightened ICWA requirements constitutes reversible error."  The *Dezi C.* Court held, "[E]rror resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of [Welfare and Institutions Code] section 224.2, document its inquiry in compliance with [California Rules of Court,] rule 5.481(a)(5), and when necessary, comply with the notice provision of [Welfare and Institutions Code] section 224.3."  (*Dezi C.* at [p. 20].)

2.    **Analysis**

Mother argues she is entitled to reversal because the juvenile court and the Department failed to comply with Cal-ICWA inquiry as to father's side of the family.[2]  Although father was asked about Indian heritage, there is no indication the

---

[2] Mother does not claim any error with respect to Cal-ICWA inquiry as to her or her side of the family.

8

Department contacted or tried to contact paternal relatives to ask the same.  The Department concedes its error.

This case falls squarely within our Supreme Court's recent *Dezi C.* opinion.  Thus, given the undisputed inquiry error here, we must conditionally reverse and remand to the juvenile court so that the court and the Department can satisfy their duties under ICWA/Cal-ICWA.  (*Dezi C.*, *supra*, __ Cal.5th __ [p. 20].)

**DISPOSITION**

The juvenile court's October 24, 2023, order is conditionally reversed. The matter is remanded to the juvenile court for compliance with the inquiry and notice requirements of Welfare and Institutions Code sections 224.2 and 224.3 and the documentation provisions of California Rules of Court, rule 5.481(a)(5). Specifically, the court shall ensure that the Department asks available paternal relatives as to daughter's potential Indian ancestry. If the juvenile court thereafter finds a proper and adequate inquiry and due diligence has been done and determines ICWA does not apply, then the court shall reinstate its order terminating parental rights. If the court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.

10